**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GREGORY THOMAS GREEN                    )
                                       )
                    **Plaintiff,**      )
                                       )    **No. 04 C 4304**
          **v.**                        )
                                       )    **HONORABLE DAVID H. COAR**
SERGEANT HARTMAN                        )
                                       )
                                       )
                                       )
                    **Defendant.**      )


**<u>MEMORANDUM OPINION AND ORDER</u>**


       Before this Court is defendant Sergeant Hartman's ("Defendant" or "Hartman") motion for summary judgment against plaintiff Gregory Thomas Green ("Plaintiff" or "Green"). For the reasons set forth below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.


**I.  FACTS**

       On April 26, 2004, Plaintiff was housed in Division II, Dorm 2, M house, at the Cook County Department of Corrections ("CCDOC"). On that date, Defendant[1] was assigned to the 11pm-7am shift as supervisor for Division II, Dorm 2. He was working with Officer Kenneth Allen Dames. At approximately 4:30 a.m., Plaintiff was involved in an altercation with fellow

---

      [1]Note: for the purposes of this opinion, "Defendant" refers solely to Hartman, and not John Does 1-5.

detainee Sonny Gardner, where he suffered injuries to his mouth. Officer Dames responded to the altercation. Both Defendant and Dames observed the Plaintiff had a bloody lip.

Following the altercation, Defendant had a five-minute conversation with Gardner, after which he spoke with the Plaintiff. Plaintiff alleges that he waited in the hallway for approximately 45 minutes before being taken to Cermak Health Services ("Cermak") for medical attention. Defendant claims that Plaintiff was taken to Cermak in less than ten minutes. At Cermak, an X-ray was taken of the Plaintiff's mouth, and Plaintiff was prescribed antibiotics and pain medication.

Upon return from Cermak, Plaintiff was given a new housing assignment with different correctional officers. Plaintiff remained in the new housing assignment for two or three days, and then was moved to Division I of the CCDOC for disciplinary segregation. Defendant remained an officer in Division II.

On April 28, 2004, Plaintiff filed a grievance with the CCDOC. On April 29, 2004, Plaintiff sent a letter to Internal Affairs regarding the altercation. On June 21, 2004, Plaintiff filed his complaint in this lawsuit.


## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable

factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

## III.    ANALYSIS

### A.    Did Plaintiff Fail To Exhaust All Administrative Remedies?

Plaintiff has brought a civil rights action pursuant to 42 U.S.C. §1983. Under 42 U.S.C. §1997e(a), a federal suit may be brought with respect to prison conditions, including inadequate medical attention, only if the plaintiff has exhausted the available administrative remedies. *Perez v. Wisconsin Dept. Of Corrections*, 182 F.3d 532 (7th Cir. 1999). The exhaustion requirement was further explained in *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999), which stated:

> [I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures.

Prisoners and detainees are required to exhaust all administrative remedies by completing all the rules established by the institution for the process. See *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Porter v. Nussle*, 534 U.S. 516 (2002). The CCDOC has a grievance process which is found in the Rules

and Regulations for Detainees.  The failure of prison officials to respond to a prisoner's claim "can render administrative remedies unavailable."  *Brengettcy, 423 F.2d* at 682 (citing *Lewis v. Washington*, 300 F.3d 829, 835)(7th Cir. 2002).  The Seventh Circuit has noted that the PLRA should not be interpreted so narrowly that prison officials are permitted to "exploit the exhaustion requirement through indefinite delay in responding to grievances."  *Id.* (citations omitted).

Defendant claims that Plaintiff failed to grieve deliberate indifference by Hartman for failure to supply proper medical care following the altercation.  Illinois has not specified the degree of factual particularity required for the contents of a grievance.  "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought...the grievant need not lay out the facts, articulate legal theories, or demand particular relief."  *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).  The grievance need simply "object intelligibly to some asserted shortcoming."  *Id.*

In the Plaintiff's grievance, he stated that Hartman "decided to postpone [Plaintiff's] immediate medical emergency" in order to search Plaintiff's bunk, storage box and person, and to have a private conversation with Gardner.  Plaintiff specified that he was "bleeding excessively from [the] mouth" and that six of his teeth were knocked out.  The grievance sufficiently alerts the prison to the nature of the wrong and shortcoming: the postponement of immediate medical attention.  As such, a reasonable jury could find for the Plaintiff.

Defendant claims that Plaintiff never alleged in his grievance that Hartman refused to supply him with the proper medication and liquid diet.  The Plaintiff made his grievance before his solitary confinement, when he was allegedly denied his medication and liquid diet.  Thus, at

the time of the grievance, the denial had not yet occurred.  Plaintiff claims that after his solitary

confinement, he submitted further grievances and supplemented his original grievance with

letters to numerous CCDOC officials describing the guards' failure to provide medication and

liquid diet.  These documents have not been produced by the defendant; however, it is claimed

that the CCDOC has failed to properly maintain its records, suggesting that the letters may have

been lost or misplaced.  Further, the Plaintiff claims he has kept records of these letters at his

aunt's home, but has not had the opportunity to search for them because he has been in custody.

The existence and contents of these documents remain in dispute.  There exists a genuine issue

of material fact as to whether Plaintiff properly grieved the conduct against Hartman leading to

this action.

Defendant further argues  that by filing his grievance on April 28, 2004 and then failing

to appeal, Plaintiff did not properly exhaust all administrative remedies available to him.  The

Seventh Circuit dealt with a similar situation in *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir.

2005).  The plaintiff in *Brengettcy*, a former pre-trial detainee, alleged that Horton and others

had attacked and assaulted him.  Soon after the August 2000 incident, he filed a grievance in line

with CCDOC procedures.  According to CCDOC procedures, he should have received a

response within 30 days.  He did not, and subsequently filed additional grievances in November

and December 2000.  After he received no response to those filings, in January 2001, he filed

suit in federal court pursuant to 42 U.S.C. §1983, alleging violations of his federal constitutional

rights and state law.  Concluding that summary judgment for failure to exhaust administrative

remedies was inappropriate, the Seventh Circuit noted that a plaintiff "is not requir[ed] to wait an

unreasonable length of time–during which evidence, witnesses, and memories may be lost–for a decision before he can go forward with his federal suit." *Brengettcy*, 423 F.3d at 679.

In the present case, the Plaintiff similarly did not receive any decision from which he could appeal. Plaintiff filed his initial grievance on April 28, 2004, two days after the incident occurred. He continued to write letters and submit additional grievances. According to CCDOC policy, he should have received a response within 30 days. Plaintiff never received a response to any of the documents that he submitted. Almost two months after the filing of his original grievance, he filed suit in federal court. Two months may reasonably be construed as an "unreasonable length of time", given the CCDOC's 30-day policy, and may thus qualify Plaintiff as having exhausted available administrative remedies.

The two cases cited by the Defendant in support of their proposition are factually distinct from the case at hand. First, in *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999), the plaintiff unsuccessfully argued that it was unnecessary to exhaust his administrative remedies when he sought monetary damages that would have been impossible to obtain through the administrative process. In the present case, the Plaintiff makes no such argument. The Plaintiff does not challenge the relevance of the administrative process, and, unlike *Perez*, has filed a grievance as required by the prison's administrative process.

Second, in *Jenkins v. Walden*, 1996 U.S. Dist. LEXIS 19521 (D. Ill. 1996), the court found that Jenkins did not exhaust available administrative remedies when he filed in federal court only a few days after he filed his grievance, not allowing the prison ample time to respond. This case is inapposite. In the present case, the Plaintiff waited almost two months before filing suit in federal court, leaving ample time for the CCDOC to respond.

For the foregoing reasons, Defendant is not entitled to summary judgment on the grounds that Plaintiff failed to exhaust available administrative remedies, because a reasonable jury could find that the Plaintiff met the grievance and complaint requirements.

## B.    Did Defendant Act With Deliberate Indifference?

A prisoner or pre-trail detainee can recover for unnecessary or wanton infliction of pain, as proscribed by the Eighth Amendment, if there has been deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (U.S. 1976); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  Deliberate indifference requires both objective and subjective elements.  *Id*.; *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).  Objectively, the condition must be "sufficiently serious" to "result in the denial of the minimal civilized measure of life's necessities." *Gutierrez* at 1369 (internal citations omitted).  Subjectively, the officials must act with a "sufficiently culpable state of mind." *Id*. (Internal citations omitted).

### 1.    The Objective Test

The objective standard requires the court to determine whether the injury was "sufficiently serious," such that denial or delay of medical attention supports an Eighth Amendment claim.  The government's obligation to provide medical care to inmates extends beyond addressing cases of "physical torture or a lingering death," but also include care for "pain and suffering" which serves no "penological purpose."  *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

There is no clear standard for what "sufficiently serious" entails.  Nonetheless, the Seventh Circuit has endorsed certain factors for consideration.  The medical condition may be

sufficiently serious if denial of medical care, resulting in pain and suffering, is "repugnant to the conscience of mankind and offensive to evolving standards of decency." *Id.* (internal citations omitted). A "serious" medical condition may also be one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1373 (internal citations omitted). The importance of treatment-worthy conditions is highlighted by the Seventh Circuit: "the existence of injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" indicates there is a serious medical condition. *Id.* (internal citations omitted).

Under these set of considerations, a reasonable jury could find for the nonmoving party. As a result of the altercation, the Plaintiff was sent to Cermak for medical attention. The doctors at Cermak took an X-ray of Plaintiff's mouth, and not only gave Plaintiff pain medicine, but also prescribed antibiotics. These facts indicate that the Plaintiff's condition was worthy of medical treatment, and that the Plaintiff may have been under substantial pain. Further, there is a genuine issue of material fact as to the Plaintiff's teeth being knocked out. The court is not equipped to draw inferences regarding the Plaintiff's teeth from an X-ray of the mandible. If, as the Plaintiff alleges, his front teeth were in fact knocked out, then the seriousness of his medical condition would be heightened. The Seventh Circuit has held that "a person who suffers three broken teeth should be given a thorough dental examination to determine if in fact he has suffered nerve damage. If nerve damage is present infection is possible, and could very easily

become systemic." *Matzker v. Herr*, 748 F.2d 1142, 1148 (7th Cir. 1984). The seriousness of the injury remains a genuine issues of material fact to be determined by a jury.

### 2.     The Subjective Standard

The subject standard requires a showing that "the prison official was subjectively aware of the prisoner's serious medical needs and disregarded" the needs. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (internal citations omitted). Mere negligence or gross negligence is not sufficient; there must be intentional or criminal recklessness in the disregard. *Salazar v. Chicago*, 940 F.2d 233, 239 (7th Cir. 1991). "Prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" for a serious injury constitutes deliberate indifference. *Matzker v. Herr*, 748 F.2d 1142, 1147 (7th Cir. 1984).

In determining Defendant's subjective awareness, it is helpful to divide the Plaintiff's allegations into two parts: (1) the delay in medical attention immediately after the altercation and *before* his visit to Cermak, and (2) the denial of medication, liquid diet, and delay in dental care *after* his visit to Cermak.

As to the delay in bringing Plaintiff to Cermak, there remains a genuine issue of material fact of whether Defendant intentionally delayed prisoner's treatment in a way that unnecessarily and wantonly inflicted pain. Defendant saw the Plaintiff shortly after the altercation, and noticed his bloody lip. Plaintiff claims that he was bleeding profusely from his lower lip and mouth, and that he informed the Defendant that his teeth had been knocked out. The Defendant denies such knowledge. This knowledge is important to determining Defendant's level of awareness, and is a material fact that remains at issue..

Moreover, mere awareness is not sufficient. The Plaintiff must also demonstrate that the Defendant intentionally disregarded the injury, of which he was aware, by delaying treatment. Plaintiff claims that he waited for approximately an hour before Defendant brought him to Cermak, during which time Defendant searched his bunk area and made him wait in the hallway for approximately 45 minutes. Plaintiff argues that this unnecessary waiting period caused him undue pain and suffering. Defendants argue that Plaintiff was brought to Cermak almost "immediately", but admits to speaking first to Gardner and then to Plaintiff. According to the Defendant, these conversationsn occured and Plaintiff arrived at Cermak in less than ten minutes. There remains a genuine issue of material fact as to how long of a "delay" in fact took place, and whether this wait constitutes recklessness and deliberate indifference.

Defendants cites *Langston v. Peters*, 100 F.3d 1235, 1239 (7th Cir. 1996) in arguing that an one hour wait is not sufficient for deliberate indifference. This does not accurately convey *Langston's* reasoning. In *Langston*, it is not the length of the wait that is deemed insufficient, but rather, it is the fact that there was no "detrimental effect caused by the one hour." *Id.* at 1241. The test is not the length of time, but whether there was detrimental effects caused as a result of the delay. Thus, at issue is the Defendant's awareness of the nature and seriousnessness of the Plaintiff's injury, as well as the amount and effects of any delay. Based on the facts presented, a reasonable jury may find for the nonmoving party.

As to the denial of medication, liquid diet and timely dental care subsequent to Plaintiff's visit to Cermak, the facts do not allow a reasonable jury to find for the Plaintiff against the Defendant. After Plaintiff received medical treatment at Cermak, he was given a new housing assignment. The new housing assignment had different correctional officers, where Defendant

was not involved. Thereafter, the Plaintiff was moved to Division I. Defendant states that he remained a correctional officer in Division II. The Plaintiff presents no evidence that the Defendant was directly involved with Plaintiff during this time. Rather, Plaintiff argues that Defendant failed to investigate and report the altercation, resulting in Plaintiff's solitary confinement, which "in turn led directly to further denial of medical treatment." [Plaintiff's Opposition to Defendant's Motion for Summary Judgment, 3.] The Defendant's failure to report the altercation is not sufficient to show that the Defendant had the awareness of the Plaintiff's serious medical needs or further that he intentionally disregarding those needs by not filing the altercation report.

The Seventh Circuit has held that "a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing." *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). The Defendant cannot be held liable for the action of other correctional officers, if he himself was not personally involved. The Plaintiff states that he was under different correctional officers after his medical treatment, and presents no evidence that Defendant was directly or personally involved in the allegations post-Cermak.[2] Thus, a reasonable jury could not find on the facts presented that the Defendant was aware of or personally involved in the failure to provide Plaintiff with the liquid diet, medical prescriptions and timely dental care subsequent to Plaintiff's treatment at Cermak.

---

[2]Here, we are dealing specifically with Defendant Hartman, and do not rule as to John Does 1-5.

Thus, Defendant is not entitled to summary judgment for deliberate indifference as to the delay in medical attention before Cermak. Defendant is entitled to summary judgment for deliberate indifference as to delay in medication, liquid diet and timely dental care subsequent to Cermak.

IV.     **CONCLUSION**

For the foregoing reasons, summary judgment is GRANTED in part and DENIED in part.

Enter:


/s/David H. Coar

_____

David H. Coar

United States District Judge


Dated: **September 18, 2006**